PROVIDENCIA IRIZARRY, en nombre y representación de y como madre con patria potestad sobre su menor hijo, ELLIS HERNÁN IRIZARRY, demandante, apelado y apelante, *v.* EL PUEBLO DE PUERTO RICO, hoy ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado, apelante y apelado.

Número 10825.

*Sometido:* 27 de noviembre de 1953. *Resuelto:* 18 de enero de 1954.

*Hon. Secretario de Justicia José Trías Monge* y *A. Torres Braschi, Procurador Auxiliar,* abogados del apelante y apelado; *Luisa María Capó* y *Yamil Galib Frangie,* abogados del apelado y apelante.

*Per Curiam:* Providencia Irizarry, en nombre y representación de su hijo menor Ellis Hernán Irizarry, y como madre con patria potestad sobre éste, instó demanda de daños y perjuicios contra El Pueblo de Puerto Rico. A esa demanda se interpuso por el demandado moción para desestimar por falta de hechos. Al ser la misma declarada sin lugar, fué el pleito a juicio y al fallarlo, el tribunal a quo llegó a las siguientes conclusiones de hechos:

"El menor demandante Ellis Hernán Irizarry, huérfano de padre, está bajo la patria potestad de su señora madre Providencia Irizarry en cuya compañía vive en el barrio 'Candelaria' de Lajas, Puerto Rico. A la fecha del accidente que ha dado margen a esta acción dicho menor contaba ocho años de edad y cursaba el segundo grado de escuela elemental.

"2. El día 27 de diciembre de 1948, a eso de las nueve de la mañana, el menor demandante caminaba por la carretera pública del citado barrio 'Candelaria' del término municipal de Lajas en busca de una 'yerbita' para su 'güimo'. A la orilla de la carretera se encontró un cartucho de cartón como de 4½ pulgadas de largo, lo llevó inmediatamente a su casa allí cercana y en el patio de la misma quitó el cartón encontrando dentro un

pedazo o tubo de metal cobrizo como de una pulgada y cuarto de largo y del grueso de su dedo meñique con un 'alambrito' pegado a uno de sus extremos el que puso sobre una piedra dándole con un machete. Al así hacerlo el pequeño artefacto hizo explosión en la cara del menor dejándolo inconsciente y causándole lesiones de las cuales fué curado y atendido en el Hospital de Lajas y luego en el Hospital Municipal de Mayagüez. La evidencia demuestra que el hallazgo del cartucho por el menor demandante y la explosión del mismo fueron actos continuos sin el conocimiento ni intervención de la madre ni de persona otra alguna. La madre se dió cuenta del accidente luego de ocurrida la explosión. Nada hay en la prueba que demuestre que el menor demandante sabía la naturaleza peligrosa del artefacto encontrado por él. Según su propio testimonio, no controvertido, él nunca antes había visto uno igual.

"3. Como resultado y consecuencia de dicho accidente el menor demandante ha perdido total y permanentemente la visión por su ojo izquierdo. Según el doctor C. W. Dunscombe, especialista que atendió al menor, hubo necesidad de extraerle de dicho ojo lesionado múltiples cuerpos extraños y cerrarle una perforación en el centro de la córnea. En opinión de dicho facultativo dicho ojo izquierdo deberá ser luego extraído toda vez que, aún sin visión, está sujeto a irritarse con facilidad. Existe en todo caso el peligro de 'oftalmía simpática' en el ojo derecho.

"4. Para la fecha del referido accidente el demandado, El Pueblo de Puerto Rico, llevaba a cabo la ampliación de la referida carretera del barrio 'Candelaria' del municipio de Lajas por administración y por conducto de su Departamento de lo Interior con sus propios empleados y bajo la dirección y supervisión de funcionarios y agentes de dicha dependencia gubernamental. En la ejecución de dicha obra el demandado por sus referidos empleados utilizaba cartuchos de dinamita los cuales hacía reventar mediante el empleo de fulminantes los cuales eran susceptibles de ser explotados por concusión. La evidencia demuestra satisfactoriamente que dichos cartuchos de dinamita y fulminante usados por el demandado en la referida obra eran idénticos al cartucho y objeto de cartón encontrado por el menor demandante a la orilla de dicha carretera en reconstrucción y al tubito u objeto de metal cobrizo con su 'alambrito' descubierto por él al remover el cartón y que luego explotó al darle sobre la piedra

con el machete. La evidencia demuestra también satisfactoriamente que entre uno y cuatro días antes del accidente se habían usado cartuchos de dinamita por los referidos empleados del demandado en la obra y que específicamente como dos días antes se había explotado dinamita como a cien metros de la casa del menor demandante. La evidencia creída por el tribunal demuestra además que si bien el sitio donde se hacían las explosiones era examinado y limpiado por dichos empleados del demandado, en ocasiones quedaban en la carretera fulminantes sin explotar algunos de los cuales fueron luego encontrados en el sitio donde el menor demandante encontró el cartucho cuya explosión le causó los daños por los que ahora reclama indemnización.

"5. De los hechos y circunstancias relatados en los apartados 2 y 4 *ante* se desprende y así lo concluímos como cuestión de hecho que el cartucho encontrado por el menor demandante y cuya explosión en sus manos le causó los daños descritos era un cartucho de dinamita de los usados por el demandado en la referida obra que quedó en la carretera sin explotar; que el demandado, por sus referidos empleados, fué negligente en permitir que dicho cartucho quedase o permaneciera sin explotar en la carretera luego de la explosión de los demás que para tal fin se utilizaron y que dicha negligencia fué la causa próxima, directa eficiente del accidente descrito y consecuentes daños al menor demandante."

Ambas partes han apelado de la sentencia que concedió al demandante una indemnización de $3,000, más las costas. Como la apelación del demandante se refiere exclusivamente a la cuantía de daños concedídale, discutiremos primeramente los errores señalados por el demandado.

■ El primero de ellos es al efecto de que el tribunal a quo erró al declarar sin lugar su moción de desestimación. El mismo no fué cometido. Por la Ley núm. 229 de 1950 (Leyes de 1949–50, pág. 587), se autorizó a la señora Providencia Irizarry a entablar a nombre y en representación de su citado hijo acción civil contra El Pueblo de Puerto Rico en reclamación de daños y perjuicios "independientemente del hecho de que el Pueblo de Puerto Rico haya o no actuado a

través de un agente especial en las transacciones o hechos que dieron lugar al accidente." (¹)

El soberano no puede ser demandado sin su consentimiento. *Campis* v. *Pueblo*, 67 D.P.R. 393, y casos citados a la página 395. De ordinario también El Pueblo de Puerto Rico (hoy día Estado Libre Asociado de Puerto Rico) sólo es responsable en daños y perjuicios cuando actúa por mediación de un agente especial. (²) Ese consentimiento para demandársele en acción de daños y perjuicios lo dió en términos generales por la Ley 76 de 1916, según fué enmendada en 1928. Al aquí demandante lo dió, además, específicamente por la citada Ley 229 de 1950. Al conceder esa autorización al demandante para que lo demandara lo relevó del referido requisito estatutario provisto por el artículo 1803 del Código Civil. Habiendo habido tal relevación, el demandante no tenía que probar que el Pueblo de Puerto Rico actuó por mediación de un agente especial. La situación es la misma que si se

---

(¹) La Ley 229 de 1950 reza en lo pertinente así:

"Sección 1.—Por la presente se autoriza a la señora Providencia Irizarry, de Lajas, Puerto Rico, a entablar a nombre y en representación de su hijo menor Ellis Hernán Irizarry, acción civil contra El Pueblo de Puerto Rico en reclamación de compensación pecuniaria por alegados daños y perjuicios sufridos por dicho menor por lesiones recibidas en accidente que tuviera con motivo de la construcción de una carretera en el Barrio 'Candelaria' de Lajas, Puerto Rico.

"Sección 2.—La señora Providencia Irizarry queda autorizada por esta Ley a entablar dicha reclamación sin que tenga que cumplir con el requisito de la previa prestación de la fianza exigida por la Ley núm. 76 de 13 de abril de 1916, enmendada por la Ley núm. 11 de 18 de abril de 1928, e *independientemente del hecho de que El Pueblo de Puerto Rico haya o no actuado a través de un agente especial* en las transacciones o hechos que dieron lugar al accidente." (Bastardillas nuestras.)

(²) El artículo 1803 del Código Civil, ed. de 1930, según fué enmendado por la Ley 120 de 1943, en lo esencial dispone:

"Artículo 1803.—La obligación que impone el artículo anterior es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.

". . . . . . . .

"El Pueblo de Puerto Rico es responsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el Artículo anterior.

". . . . . . . . ."

tratara de un patrono privado, responsable por las actuaciones de sus agentes dentro de las atribuciones de su cargo. Véase *Rodríguez* v. *El Pueblo*, ante pág. 401. Bajo las circunscias no erró el tribunal sentenciador al resolver que la demanda aducía hechos determinantes de causa de acción ni al declarar sin lugar la moción para desestimar instada por el demandado.

■■ El siguiente error señalado por el demandado es al efecto de que el tribunal a quo erró al resolver que el Pueblo fué negligente y al concluir que esa negligencia fué la causa próxima de los daños sufridos por el menor.

Las conclusiones de hechos del tribunal sentenciador están claramente sostenidas por la prueba. De esas conclusiones se desprende que para aquel entonces el menor contaba ocho años de edad; que el 27 de diciembre de 1948 dicho menor caminaba por una carretera pública y se encontró a orillas de ésta un cartucho de cartón como de 4½ pulgadas de largo; que él nunca antes había visto uno igual; que lo llevó inmediatamente a su casa, situada allí cerca, y en el patio de la misma le quitó el cartón, encontrando dentro un tubo de metal cobrizo como de pulgada y cuarto de largo, con un alambrito pegado a uno de sus extremos, el que puso sobre una piedra y le dió con un machete; que al así hacerlo, el pequeño artefacto hizo explosión en la cara del menor, produciéndole lesiones que le ocasionaron la pérdida de la visión por el ojo izquierdo; que para la fecha del referido accidente el demandado llevaba a cabo la ampliación de la carretera del barrio Candelaria, por administración y por conducto de su Departamento de lo Interior, con sus propios empleados y bajo la dirección de sus funcionarios; que en la ejecución de dicha obra el demandado utilizaba cartuchos de dinamita que eran idénticos al hallado por el menor; que entre uno y cuatro días antes del accidente se habían usado cartuchos de dinamita por los empleados del demandado en la indicada obra; y que si bien el sitio donde se usaban los explosivos era examinado y limpiado por los empleados del demandado, en ocasio-

nes quedaban en la carretera fulminantes sin estallar, algunos de los que eran luego encontrados en el sitio donde el menor demandante halló el cartucho cuya explosión le causó los daños por los que ahora reclama indemnización. Ante esa situación de hechos, forzoso es concluir que el demandado fué negligente y que esa negligencia fué la causa inmediata del accidente.

■■ No es posible concluir, sin embargo, que el menor demandante incurrió en negligencia contribuyente. Para aquel entonces él contaba ocho años de edad. Nunca antes había visto cartuchos de dinamita ni fulminantes similares al que se halló y no tenía conocimiento del peligro que corría al manipular el mismo. A niños de poca edad—como el demandante—no se les requiere que cumplan con las normas de conducta que es razonable esperar de los adultos, debiendo su conducta ser juzgada por la norma a esperarse de un niño de igual edad, inteligencia y experiencia bajo circunstancias similares a las que surjan del caso. *Álvarez* v. *Hernández*, 74 D.P.R. 493; *Cruz* v. *Rivera*, 73 D.P.R. 682; *Figueroa* v. *Picó*, 69 D.P.R. 401; *Castro* v. *González*, 58 D.P.R. 368.

La gran mayoría de los tribunales de los Estados Unidos ha establecido responsabilidad de un demandado en circunstancias similares o idénticas a las del caso de autos: negligencia de un demandado al dejar explosivos en sitios accesibles para niños y acto posterior positivo de un niño de producir la explosión al darle con un objeto al explosivo. Véase 10 A.L.R. 2d 22 *et seq.* A la página 116 de esa obra se dice:

"Hablando en términos generales, los tribunales han resuelto . . . en la mayoría de los casos que cuando se usan o almacenan explosivos en tal forma que los mismos resultan accesibles para los niños, los actos específicos de éstos al tomarlos y estallarlos no constituyen, como cuestión de derecho, una causa interventora independiente que exonera al demandado de responsabilidad por su negligencia original, por lo menos cuando el niño no posee suficiente inteligencia o entendimiento para comprender plenamente el peligro envuelto."

█ El tercer y último error imputado por el demandado al tribunal a quo es en el sentido de que éste erró al declarar con lugar la demanda y al condenarle a pagar la suma de $3,000; y el único señalado por el demandante impugna por insuficiente la cuantía de la indemnización. Ambos errores pueden, por tanto, ser discutidos conjuntamente.

De las conclusiones de hechos reseñadas se desprende que el menor demandante ha perdido total y permanentemente la visión por su ojo izquierdo, así como que según la opinión del especialista que le atendió, dicho ojo debe ser luego extraído ya que existe el peligro de oftalmía simpática en el ojo derecho, es decir el peligro de que el menor pueda quedar totalmente ciego. Dadas las anteriores conclusiones creemos que ha debido concederse una indemnización mayor. Consideramos que la misma debe ser aumentada a la suma de quince mil dólares.

*Debe modificarse la sentencia apelada en el sentido indicado y así modificada confirmarse.*

---

Opinión concurrente del JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ en la cual concurre el JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL.

Los puntos de vista expresados en su erudita opinión concurrente por el Juez Asociado Sr. Ortiz para proclamar vigente, en el estado actual de nuestro derecho, la doctrina de negligencia comparada—cuya aplicación en este caso, como acertadamente señala el Juez Asociado Sr. Sifre, no está justificada por los hechos aquí probados—me impelen a dejar apuntado mi criterio en el sentido de que dicha doctrina, por lo menos en lo que respecta a la distribución de daños, no puede adoptarse por mero fíat judicial. Hace falta legislación que provea—una vez determinada judicialmente la causa del daño por la concurrencia de culpas—las normas por las cuales deban regirse las consecuencias de esa determinación. La ausencia de tales normas en nuestro derecho positivo no

las puede suplir el poder judicial a su capricho. Lawson, *Negligence in the Civil Law*, (1950).

No estoy haciendo aquí balance de los valores morales envueltos en la doctrina de negligencia comparada como norma jurídica contentiva de un mejor sentido de justicia. No estoy oponiéndome, ni me opongo por el mérito intrínseco de su utilidad social—a la doctrina en sí. Su *deseabilidad* nada tiene que ver con la improcedencia de su aplicabilidad. Su adopción judicial no estaría, a mi juicio, autorizada bajo el estado actual de nuestra legislación. La autoridad judicial no puede extenderse, en la interpretación de un estatuto, hasta la usurpación de funciones y poderes que residen en el poder legislativo. Sería caprichosa y arbitraria, y sin base legal una decisión de este Tribunal que escogiera una de las varias fórmulas que para la distribución de daños se han establecido legislativamente en aquellas jurisdicciones que han adoptado la doctrina de negligencia comparada: fijar en un 80 por ciento del daño total tasado el monto de una indemnización cuando el demandante ha contribuído en un 20 por ciento a su propio daño; o fijarla en un 60 por ciento en ese mismo caso porque el 20 por ciento de negligencia contribuyente deba condonar el 20 por ciento del 80 por ciento de la responsabilidad del demandado; o fijarse automáticamente en un 50 por ciento tan pronto media negligencia contribuyente. Véase *"Comparative Negligence, Pro-Con"*, 28 *Journal of the State Bar of California*, 22 *et seq.*

La materia que nos ocupa pertenece al ámbito de la política pública del Estado, la cual no corresponde al poder judicial formular. Yo creo en la necesaria evolución del derecho y en el reexamen y modificación de los conceptos y doctrinas de la jurisprudencia, como función judicial necesaria para mantener en marcha continua de progreso los ideales de superación y de justicia del ser humano. Pero no puedo, a través de un proceso glorificador de la omnipotencia judicial marchar a la conquista de la fortaleza legislativa.

Opinión concurrente del JUEZ ASOCIADO SEÑOR ORTIZ en la cual concurren el SEÑOR JUEZ PRESIDENTE y el JUEZ ASOCIADO SEÑOR BELAVAL.

Concurro con el resultado de la opinión de este Tribunal en el caso de autos, en cuanto a la cuantía de la indemnización a ser pagada por el demandado, y en cuanto a la obligación del demandado, por haber sido negligente sus agentes, de resarcir los daños causados por esos agentes a la parte demandante. Pero estoy en desacuerdo con algunos de los fundamentos que le han servido de base a este Tribunal para llegar a ese resultado. Creo que, aunque la opinión de la mayoría de los componentes de este Tribunal es *Per Curiam*, los puntos de vista que expresaré en el curso de esta opinión son de suficiente importancia para justificar un amplio desarrollo de mi tesis.

Estoy de acuerdo con el postulado de que los agentes del demandado fueron negligentes. Pero esa conducta negligente no fué la causa única de la totalidad de los daños sufridos por el niño Ellis Hernán Irizarry. La causación del accidente se debe, en parte, y hasta cierto grado de leve magnitud, a la propia conducta negligente del niño. En la opinión mayoritaria se indica que el niño no fué responsable de negligencia contribuyente. Estoy en desacuerdo con esa conclusión. Creo que el menor en cuestión fué algo descuidado y negligente, hasta cierto grado, y que su culpa, aunque de carácter leve, contribuyó a la causación del accidente y que, por lo tanto, al menor se le puede imputar negligencia contribuyente, tal como trataré de demostrar posteriormente. Pero también creo que el hecho de que el niño haya sido responsable de negligencia contribuyente, no debe eximir totalmente de responsabilidad al demandado. Estoy convencido de que, en estas situaciones en que ambas partes son negligentes, debe compararse el grado y magnitud de la negligencia de cada uno de los actores y que, existiendo dos causas del accidente y de los daños, esto es, habiendo sido causado el accidente tanto por la negligencia del demandado como por la negligencia del

demandante, debe medirse y compararse el grado de la participación de cada uno en tal causación a los fines de fijar la responsabilidad del demandado. Naturalmente, si la conducta negligente del demandado representa ser la causa superior o de mayor grado del accidente, a él debe imponérsele responsabilidad, pero no en cuanto a la totalidad de los daños ocasionados, ya que tambrén la propia víctima ha contribuído, aunque en menor grado, a la causación de esos daños. La negligencia contribuyente de la víctima debe servir para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximir totalmente de responsabilidad al demandado. En otras palabras, creo que debe desecharse de esta jurisdicción la doctrina de negligencia contribuyente como eximente total de la responsabilidad del demandado, independientemente de la magnitud de esa negligencia contribuyente, y creo que debemos adoptar la doctrina de negligencia comparada o comparativa, que ha sido aceptada hoy en día por la mayoría de los países del mundo, y por la gran mayoría de los tratadistas modernos.

La doctrina de negligencia contribuyente, como eximente total de responsabilidad, es claramente injusta, contraria a las realidades físicas relativas a causación y contraria a nuestro Código Civil. Ha sido creada judicialmente e incorporada artificialmente a nuestro sistema de derecho por vía de aplicación indebida de los viejos principios del Derecho Común, inaplicables a las realidades de nuestro ambiente específico. En la actualidad ha sido repudiada aun en la Gran Bretaña, en donde se originó el concepto. De otro lado, como veremos más adelante, la doctrina de negligencia comparada es ₁compatible con las disposiciones de nuestro Código Civil, y es precisamente la doctrina del Derecho Civil en general, aun antes de haberse aprobado el Código Civil de España.

Escojamos una situación específica como ilustración del problema general. Un demandado conduce su vehículo a una velocidad exagerada, por ejemplo, a 90 millas por hora. En ese momento, un peatón trata de cruzar negligentemente la

carretera y ocurre un accidente. Comparando la negligencia de ambas partes, y el grado de participación en la causación atribuíble a cada uno, asumamos que la negligencia superior del demandado como una de las dos causas del accidente, represente ser un 80 por ciento de la causación del accidente, y que la negligencia contribuyente del peatón, de menor grado relativo, represente ser el 20 por ciento de la causación. Bajo la doctrina de negligencia contribuyente actualmente prevaleciente en Puerto Rico, el hecho de que el peatón ha sido también negligente exonera *totalmente* de responsabilidad al demandado, a pesar de que este último ha sido culpable de una negligencia extrema que ha contribuído en mucho mayor grado al accidente que la negligencia menor del demandante. Aparentemente esa doctrina actual de negligencia contribuyente está predicada en el postulado de que basta con que la negligencia de la víctima contribuya a causar el accidente para liberar absolutamente al demandado, no importa cuál sea la importancia o magnitud de esa contribución, esto es, que para imponer responsabilidad a un demandado su negligencia debe ser *la única* causa del accidente. No hay nada en las disposiciones del artículo 1802 de nuestro Código Civil que indique que un demandado negligente es responsable solamente cuando su negligencia sea la única causa del accidente. Tal requisito de la única causa es contrario a la justicia y a la realidad de las cosas, cuya realidad nos indica que el accidente que nos sirve de ejemplo se debe a dos causas, y que ambas han causado el accidente. Está bien que el demandado en el ejemplo responda solamente del 80 por ciento de los daños causados, ya que, como cuestión de realidad, él ha causado ese 80 por ciento de los daños. Pero no es justo que se exonere totalmente al demandado por el hecho de que el peatón haya causado el 20 por ciento de sus propios daños. Desde ese punto de vista la pregunta no es "quién tuvo la culpa", sino "quién tuvo la mayor parte de la culpa" o quién causó la mayor parte de los daños, a los fines de la imposición de responsabilidad.

En los propios Estados Unidos los comentaristas más destacados han criticado violentamente la doctrina de negligencia contribuyente. 28 Chicago-Kent L. Rev. 189, 304, números de junio y septiembre de 1950, Ernest A. Jurk, "Comparative Negligence on the March"; 51 Mich. L. Rev. 465, número de febrero de 1953, Prosser, "Comparative Negligence", 99 Pa. L. Rev. 572, 766; 17 Corn. L. Q. 333, 604, "A Study of Comparative Negligence"; 6 La. L. Rev. 125: "Comparative Negligence—Louisiana's Heritage"; 11 Tulane L. Rev. 112: "Comparative Negligence in Louisiana"; 39 Ill. L. Rev. 36, 116, 197, Green, "Illinois Negligence Law", 36, 116; 62 Yale L. J. 691, número de abril de 1953, Fleming James Jr.: "Contributory Negligence". El Profesor Green, en su artículo "The Individual's Protection under Negligence Law: Risk Sharing", en 47 Northwestern L. Rev. 751, 757: "Symposium Issue on the Law of Torts", indica que la doctrina de negligencia contributoria es la más cruel e indefensible del Derecho Común. El Profesor James, de la Escuela de Derecho de Yale, indica en su artículo: "Contributory Negligence", en el número de abril de 1953, que no hay justificación alguna, de política general o de doctrina, para tal regla, de "todo o nada", en cuanto a responsabilidad, siendo una doctrina Dacroniana, concebida a base de un concepto medieval de causa y desarrollada en un ambiente de inhumano "laissez faire". Las críticas formuladas contra la doctrina, en cuanto exime totalmente de responsabilidad a un demandado, pueden sintetizarse así:

(1) Es injusto el que un demandado que ha sido negligente en mayor grado que un demandante sea exonerado totalmente de responsabilidad por el hecho en sí de que el demandante haya sido también negligente, aunque en menor grado y extensión que el demandado. Tal fórmula no establece un balance adecuado de equidades. Sería preferible el que la responsabilidad de ambas partes sea proporcionada al grado o extensión de las respectivas conductas negligentes, o sea, que se distribuyan o se repartan las responsabilidades de

acuerdo con la magnitud de la negligencia de cada parte, bajo la doctrina de "negligencia comparativa". No es justo el que el conductor de un vehículo que lo guíe por la izquierda de la carretera a una velocidad de 100 millas por hora sea exonerado totalmente de responsabilidad porque otro vehículo conque ha chocado viniese en dirección contraria a una velocidad no autorizada por la Ley, pero menor que la del carro del demandado, o porque un transeúnte negligentemente trate de cruzar la calle. La responsabilidad del demandado debe ser mitigada o reducida en virtud de la negligencia del demandante, pero no debe ser eliminada totalmente.

(2) Se ha pretendido justificar la doctrina de negligencia contribuyente, como instrumento de anulación total de la responsabilidad de un demandado, a base de la teoría de causación, o sea, que si un demandante ha sido negligente, la negligencia del demandado no es la causa del accidente. El error esencial de esa tesis consiste en que ella asume que debe haber, jurídicamente hablando, una sola causa de un accidente. Esa ficción jurídica no corresponde a la realidad física de los hechos, ya que un accidente puede ser ocasionado por diversas causas. James, "Contributory Negligence", 62 Yale L. J. 691, 697. Precisamente, en aquellos casos en que la negligencia del demandante es la única causa del accidente, no hay necesidad ni margen para invocar la doctrina de negligencia contributoria, ya que, en tal caso, el demandado nunca sería responsable, independientemente de la negligencia del demandante. James, ob. cit., 62 Yale L. J. 697. La ocasión en que se podría invocar, en teoría, la regla de negligencia contribuyente sería cuando ambas partes fuesen negligentes, o sea, cuando ambos han contribuído a causar el accidente. Si asumimos, como debemos hacerlo, el concepto de causas múltiples, ello conlleva la eliminación de la regla de la causa única, e implica la aplicación de la regla de distribución proporcional de daños y responsabilidades, de acuerdo con la magnitud y el grado de la negligencia de ambas partes, y de acuerdo con la aportación de cada parte a la causación del accidente. Tra-

tándose de causas concurrentes o contribuyente, debe medirse la extensión de cada causa a los fines de fijar responsabilidades.

Ya que estamos en este campo, hagamos una digresión que podría ser útil en la solución del problema en cuanto al aspecto de causación. El concepto de "causa próxima" ha apasionado a los estudiantes de la ley de daños y perjuicios. Ha sido recientemente caracterizada como dando lugar a un "crecimiento canceroso de refinamientos y sutilezas técnicas." 47 Northwestern L. Rev. 759. Varias teorías se han propugnado: Véase el artículo "Legal Cause" en 60 Yale L. J. 761.

(a) La del antecedente necesario, en que se considera como causa lo que constituye una condición "sine qua non" para que se produzca determinado efecto, o sea, que el accidente no hubiera ocurrido a no haber sido por cierta actuación u omisión. Podría ser útil esta teoría si ella se interpreta en forma compatible con el reconocimiento de la posible existencia de causas múltiples y si a ella se acompaña el factor de "previsibilidad", parte esencial del concepto de negligencia.

(b) Causa es aquélla que constituya un factor sustancial o predominante en la ocurrencia de un accidente. *Restatement of the Law of Torts*, sección 431, tal como quedó calificada en el Suplemento de 1948, al efecto de incluir el concepto de "previsibilidad". Esa teoría es congruente con la tesis artificial de la "única causa". Como cuestión de realidad física, puede haber causas que contribuyan al accidente que no sean sustanciales ni predominantes.

(c) Teoría de la previsibilidad, o sea, que el resultado sea la consecuencia probable de una actuación u omisión. Cf. *Portalatín* v. *Alers*, 69 D.P.R. 747. Esta ya es parte de la definición de negligencia, y no de la de causa, como cuestión de hecho y de realidad física.

Los tratadistas del derecho civil también han teorizado sobre el particular. Colombo, Culpa Aquiliana, 138, *et seq;* Nueva Enciclopedia Jurídica, Vol. 3, pág. 786, 792, y entre las interpretaciones aducidas, encontramos la de la equivalencia

de las condiciones, según la cual la suma de las fuerzas que originan el suceso conforman su causa, de suerte que todas ellas coadyuvan al resultado, la de la eficacia predominante, la de la condición más próxima y la de la "causalidad adecuada", bajo la cual el hecho de que proviene la responsabilidad es apto para acarrear.el daño causado, de tal modo que el daño era previsible, no existiendo responsabilidad cuando el daño surja por sobrevenir circunstancias extraordinarias que escapan a la experiencia corriente.

El Tribunal Supremo de España ha pasado sobre esta cuestión. En su sentencia del 25 de enero de 1933 no quiso aceptar de una manera concreta ninguna doctrina específica de causalidad, señalando que la jurisprudencia no puede tomar parte en la discusión filosófica sobre tal extremo, debiendo el juez sentenciador en cada caso considerar la cuestión de causación como una de hecho, prestando su atención al "pensamiento compensador de la ley". En su sentencia de 22 de febrero de 1946, resuelve que la causa legal es aquélla que tiene conexión lógica y directa con determinado resultado.

Desde el punto de vista del caso de autos, la actuación de los agentes del demandado fué la causa legal de los daños sufridos por el niño, bajo cualquiera de las teorías arriba enunciadas, y la conducta del niño fué también causa del accidente. Desde un punto de vista general, debemos adoptar las siguientes normas:

(1) La cuestión de causación es una de hecho, a ser resuelta por el juez sentenciador en cada caso, de acuerdo con las realidades de cada caso específico.

(2) Debe existir una conexión lógica entre una causa y su efecto.

(3) Un accidente puede sobrevenir de causas múltiples, o sea, el daño puede surgir de varias causas concurrentes, y el tribunal sentenciador debe dictaminar sobre la importancia relativa, grado y magnitud de cada causa, y en cuanto a la aportación proporcional de cada causa al daño producido, a los fines de señalar una distribución proporcional de respon-

sabilidades. Este concepto corresponde a la realidad de la coexistencia de causas. Estamos de acuerdo con lo expuesto por Borrell Maciá en su obra Responsabilidades Derivadas de Culpa Extracontractual, cuando dice, en la página 65:

"En la práctica, los hechos no acostumbran a presentarse de una manera simplista, sino que las causas aparecen mezcladas y de la concurrencia de varias de ellas y de ciertas condiciones o circunstancias surge el daño.

"Cuando éste es consecuencia de dos o más causas, cada culpable debe responder de lo que pueda imputársele . . . ."

La doctrina de negligencia contribuyente empezó a desarrollarse en Inglaterra en los comienzos del siglo 19. Fué un postulado jurídico que respondió a una situación económica específica. En los inicios del desarrollo de la Revolución Industrial, prevalecía una actitud de pasividad del Estado en cuanto a la iniciativa privada de dejar hacer (*laissez faire*). Aparentemente los tribunales querían reducir la carga a ser asumida por los patronos en cuanto a accidentes industriales, mediante el establecimiento de una excepción al principio de responsabilidad por negligencia, o sea, mediante la consagración de la doctrina de negligencia contributoria. Véanse los artículos ya citados de James, Prosser, Turk y Green. Ello era especialmente cierto en cuanto a accidentes ferroviarios, ya que se quería estimular la expansión de los ferrocarriles. Pero cien años después esa doctrina no es necesaria y es incompatible con el bienestar general, en tanto, repetimos, exonera totalmente de responsabilidad a un demandado, independientemente del grado de negligencia del demandante. Especialmente en Puerto Rico no ha habido la misma necesidad y urgencia económica que prevalecía en los países anglosajones en las primicias del siglo pasado.

## La Culpa Común en el Derecho Civil

Hemos caracterizado la doctrina de distribución de la reparación de daños de acuerdo con el grado y magnitud de la negligencia de ambas partes como una de "negligencia com-

parada". La misma doctrina, aunque no con ese nombre específico, prevalece casi universalmente en la inmensa mayoría de los países regidos por el sistema del Derecho Civil, con la triste excepción de Puerto Rico. En esos países se expresa la tesis de la negligencia comparada en términos del reparto proporcional de daños, dentro del campo general de la culpa común, o sea, de la negligencia de ambas partes. Y en algunos de esos países, notablemente en Francia y en Argentina, que se caracterizan por la madurez y el desarrollo preeminente de su sistema jurídico, se ha adoptado, hace más de un siglo en el caso de Francia, la doctrina del reparto proporcional de daños de acuerdo con el grado de negligencia y de causación de cada parte, a base precisamente de disposiciones estatutarias idénticas al artículo 1802 de nuestro Código Civil. No he encontrado un solo país bajo el Derecho Civil, fuera de Puerto Rico, en que, en un caso en que la negligencia del demandante sea menor que la del demandado, se haya adoptado la doctrina de negligencia contribuyente como eximente total de responsabilidad.

El Derecho Romano eximía de responsabilidad a un demandado en virtud de la negligencia de la víctima solamente cuando tal negligencia era la única causa de un accidente, o cuando el propio demandado no era negligente, pero no reconocía la doctrina de negligencia contribuyente tal como se ha estado aplicando en la actualidad. Turk, "Comparative Negligence", 28 Chicago-Kent L. Rev. 189, 208–215; 6 La. L. Rev. 125; 11 Tulane L. Rev. 112. Giorgi, en su obra Teoría de las Obligaciones, Vol. 5, pág. 247, indica que el derecho civil, basándose en el romano, reconoce el principio de compensación de culpas, que se neutralizan totalmente una con la otra, pero "se desprende, de la naturaleza misma de la regla expuesta, que las culpas, para ser compensables, deben ser del mismo grado; no se compensaría la culpa leve con la culpa lata y con el dolo". De otro lado, la mejor evidencia nos demuestra que la Ley Aquiliana autorizaba la doctrina de negligencia comparada o comparativa, al establecer la gradua-

bilidad o graduación de culpas, y al determinar que la culpa leve o levísima podía ser origen de responsabilidad proporcionada al grado de culpa. 8 Manresa 184, 185, 5ta. ed. Hillyer, en su artículo: "Comparative Negligence in Louisiana", 11 Tulane L. Rev. 112, 119 *et seq.*, indica que los juristas romanos repudiaban la doctrina de negligencia contributoria en tanto derrotase la responsabilidad de un demandado, pero que en la Ley Aquiliana hay base para la conclusión de que debe compararse la culpa o negligencia de ambas partes y determinarse su responsabilidad respectiva de acuerdo con la cantidad o grado de culpa o negligencia atribuíble a cada uno, implicando ello un prorrateo de daños o pérdidas o una reducción en los daños a ser indemnizados por un demandado.

El artículo 1382 del Código Civil de Francia es prácticamente idéntico al 1802 nuestro, ya que determina que "todo acto que causa un daño a otro, obliga a aquél por culpa (*faute*) de lo que ha sucedido, a repararlo". Los tribunales de Francia han establecido que la generalidad de ese artículo permite la aplicación de la doctrina de negligencia comparada, según ya la hemos definido en el párrafo anterior. 11 Tulane L. Rev. 114. En 20 Laurent 478, se dice lo siguiente, al interpretar los artículos 1382 y 1383 del Código Civil de Francia:

". . . el artículo 1,382 establece el principio de que un hecho perjudicial no da lugar a reparación sino cuando hay *culpa,* pero no determina los caracteres de esta culpa. Hay gradaciones en las faltas: toda falta, por leve que sea, obliga a su autor a repararla. Se puede decir que el artículo 1,382 lo supone así, puesto que se sirve de la palabra *falta* sin limitarla . . ."

En la misma forma podemos decir que nuestro artículo 1802 usa las palabras *culpa o negligencia* sin limitarlas, admitiendo, por lo tanto, el concepto de gradaciones en la negligencia.

En 20 Laurent 609 se dice lo siguiente:

"El adagio no tiene ya aplicación cuando hay culpa que reprochar a aquél por cuyo acto un daño ha sucedido, aunque la parte perjudicada fuese también culpada de imprudencia. No debe perderse de vista el principio fundamental de esta materia, y es que la culpa más leve es causa de responsabilidad; de esto se sigue que la imprudencia de la víctima del hecho perjudicial, no quita la culpa del autor, a menos que esté probado que esta imprudencia fué la única causa del daño sufrido. Si no es la única, hay otra que carga el autor, y por leve que sea, lo hace responsable. Estos son los términos de la sentencia de la Corte de Lieja, y creemos que este es el verdadero principio. El que por un acto suyo causa el daño, pudo haber tomado precauciones para impedirlo; si no lo hizo, tiene la culpa y por lo tanto, está sometido a una acción de daños y perjuicios.

"La jurisprudencia opina en este sentido. Un viajero insiste en colocarse en un coche demasiado cargado ya; el coche se vuelca por exceso de carga: ¿Tendrá el viajero una acción? La afirmativa fué sentenciada con justicia. Debe verse si a pesar de la imprudencia del viajero, es culpable el conductor, y esto no puede ser negado. No es al viajero, siempre dispuesto a partir, a quien incumbe prever y evitar el peligro que resulta de una sobrecarga; esto es el deber del conductor; no cumple con su deber recibiendo al viajero; luego es culpable por haber accedido a su deseo. En el caso, la culpa no podía ser negada, puesto que constituía una desobediencia a los reglamentos por parte del conductor, y toda infracción es un delito civil. Se cita una sentencia de la Corte de Riom como contraria a esta doctrina. En realidad, está conforme con ella, puesto que condena al conductor a los daños y perjuicios; pero en la estimación de estos daños y perjuicios, considera la culpa del viajero, lo que es la aplicación de un principio general, como lo diremos más adelante. Nada es más justo; si la imprudencia del viajero no le quita la culpa al conductor, cuando menos la disminuye, y la reparación debe ser proporcional a la falta."

En la página 614 se dice lo siguiente:

"La consecuencia más natural de la culpa no es librar de toda responsabilidad al autor del acto perjudicial, sino disminuirla en el sentido de que los daños y perjuicios a que se le condena sean proporcionados a la extensión de la culpa, y ésta sea disminuída cuando el daño es imputable en parte a la culpa de aquél que lo

sufrió. Tal es la jurisprudencia. Un operario sube sobre una máquina para engrasarla; la máquina mal montada de por sí, hiere al operario. A su demanda por daños y perjuicios, la compañía opuso que el obrero era culpable, visto que no tenía que montar en la máquina para engrasarla. El tribunal del Sena, tomando en cuenta otras circunstancias, dedujo que había lugar a moderar los daños y perjuicios; en apelación, la Corte los aumentó en virtud de que la culpa de la compañía era proporcionalmente mayor que la que se podía imputar al operario.

"Puede suceder que las culpas recíprocas de ambas partes sean de tal naturaleza que excluyan toda causa de responsabilidad. Cuando el demandante es culpable para con el demandado por la misma falta que reprocha a éste, no hay lugar a concederle daños y perjuicios, porque la indemnización que obtendría con este título, debería devolverla después de la condenación pronunciada en provecho de la parte contraria; de manera que los daños y perjuicios de que es acreedor se compensan con aquéllos de que es deudor. . . ."

En Planiol-Ripert, Derecho Civil Francés, Vol. 6, pág. 749, se dice lo siguiente:

"En caso de culpa de la víctima, cuando ésta se considera como causa concurrente (concausa) del daño, la responsabilidad deberá ser dividida por los Tribunales de instancia, que apreciarán libremente la porción de responsabilidad de cada uno . . ."

En la página 784 de la misma obra se dice lo siguiente:

"Culpa Común.—Pero, la culpa de la víctima no suprime la responsabilidad del autor del daño si éste hubiere incurrido igualmente en culpa causal; solamente produce la división de la responsabilidad. La Corte de Casación deja a los Tribunales de instancia la misión de apreciar libremente la porción de los daños que ha de imputarse a la víctima, si bien exige que no puede liberársele totalmente. Esto es conforme a la teoría de la equivalencia de condiciones, según la cual, los antecedentes del daño han constituído, sin exceptuar a ninguno de ellos, los eslabones indispensables de la cadena o serie de causas.

"Para la distribución del daño, los Tribunales se inspiran en la mayor o menor proximidad entre el hecho culposo y el daño, pero, sobre todo, en la respectiva gravedad de las culpas. Tal

es la regla consagrada en materia de abordajes por el artículo 407 del C. Com., modificado por la ley del 15 de julio de 1915." ;

En la nota (2) de la página 784 de la citada obra de Planiol-Ripert, se reproduce lo resuelto por la Corte de Casación, (aplicable al artículo 1802 nuestro) en la forma siguiente:

"(2) 'El artículo 1382—expresa—no limita la responsabilidad de aquél por cuya culpa se ha producido un accidente al único supuesto en que esa culpa haya sido causa única e inmediata del accidente perjudicial; si la persona dañada ha incurrido también en imprudencia, esa circunstancia puede, sin duda, autorizar a los Tribunales para reducir la cuantía de los daños y perjuicios, pero no puede liberarse de toda responsabilidad a aquél cuya culpa ha contribuído en cierto modo a determinar el accidente o agravar sus consecuencias'."

Demolombe, en su obra "Cours de Code Napoleon", Tomo 31, pág. 434, nos dice lo siguiente (traducción libre del ponente o autor de esta opinión):

"¿De quién es la culpa? Ésa es siempre la cuestión que se plantea en esta clase de casos. Indudablemente, puede ocurrir que la culpa entera sea imputable a una sola parte, en cuyo caso esa parte debe responder de los daños, cuando no sea imputable culpa alguna al que sufre los daños.

"Pero ése no es el caso usual. Ocurren con más frecuencia los casos en que el daño es causado por el uno y por el otro. Entonces nos encontramos con la tesis de 'la culpa común', que juega un papel destacado en esta clase de problemas. No es que esa tesis presente grandes dificultades en nuestro Derecho. De primera intención, es evidente que el hecho en sí de que la persona que haya sufrido los daños haya incurrido en culpa, imprudencia o negligencia, no exonera de toda responsabilidad a aquél otro (demandado, nota nuestra) que haya causado daños al primero con su culpa o negligencia.

"Nos encontramos también con que este principio está consagrado por una decisión de la Corte de Casación, decisión más notable aun porque revocó una opinión rendida sobre este asunto en sentido contrario por el Tribunal de Amiens. Se dijo lo siguiente:

" 'Vistos los artículos 1382 y 1383 y considerando que esos artículos (análogos al 1802 y 1803 nuestros, nota nuestra) *no limitan* la responsabilidad que ellos establecen sobre aquél que ha incurrido en culpa al solo caso en que su culpa sea la causa única e inmediata del accidente, si la persona lesionada ha sido ella misma imprudente, esa circunstancia puede indudablemente autorizar a los tribunales *a reducir* la indemnización, pero no a relevar totalmente de obligación al demandado que ha contribuído con su culpa al accidente.     (Sentencia del 20 de agosto de 1879). (Bastardillas nuestras.)

"A cada uno de acuerdo con su parte de responsabilidad.   Si ella es exactamente igual del uno y del otro, habiendo culpa común, igual de ambos, entonces las dos responsabilidades se aniquilan y se compensan mutuamente, y no hay condena alguna en daños y perjuicios.   Pero si las responsabilidades son desiguales, por existir diferencia en los grados dentro de la culpa común, entonces cada uno debe asumir su parte de los daños, en la proporción y en la medida de la culpa que le sea imputable.   Es a los magistrados a quienes corresponde determinar esta medida y esta proporción, de acuerdo con las circunstancias de cada caso.  ... (pág. 442) y apreciar, dentro de su poder discrecional, la parte de responsabilidad que debe corresponder a cada uno de ellos, o si las responsabilidades se compensan o se aniquilan totalmente."

En la obra de Aubry y Raut, "Droit Civil Francais", Tomo 6, pág. 368, 369, se dice, de acuerdo con la traducción libre de este ponente:

"Si ha habido culpa tanto de parte del que ocasiona el daño como del que lo recibe, la fijación de la responsabilidad y de la parte de los daños imputables al demandado, corresponde al arbitrio del juez.   Es abundante la jurisprudencia contemporánea sobre esta doctrina de la culpa común.   (Casos citados.)"

El artículo 1109 del Código Civil de Argentina es sustancialmente idéntico al 1802 nuestro, ya que determina que "todo el que ejecuta un hecho, que por su culpa o negligencia ocasiona un daño a otro, está obligado a la reparación del perjuicio".   La doctrina prevaleciente en Argentina es al efecto de que ese artículo no exige, para que un demandado negligente sea responsable, que su negligencia sea la única causa

del accidente, y que, si ambas partes son negligentes deben prorratearse o repartirse proporcionalmente los daños de acuerdo con el grado de negligencia de cada uno, y de acuerdo con la proporción en que cada uno haya contribuído a la causación del accidente. Es en extremo interesante lo que se dice en Colombo, Culpa Aquiliana, y merece ser citado extensamente, como indicativo de la doctrina del Derecho Civil. De la página 179 en adelante se dice lo siguiente:

"Puede haber culpa por ambas partes: por la del autor directo de la injuria y por la de la víctima, pues si aquél ha sido negligente en su acción u omisión, ésta puede haberlo sido también y colocarse, por su falta de previsión, en trance tal que las consecuencias del suceso también a ella le sean imputables. Se estará, entonces, en presencia de lo que se denomina 'culpa concurrente' o 'concurso de culpas', que si bien no borra la responsabilidad del agente principal, la atenúa en cuanto a la obligación de indemnizar que del acto surge.

"Como muy bien lo dice Demogue en su obra magistral, la explicación del fenómeno se encuentra en el nexo causal entre el daño y el hecho culpable, hecho que no emana de uno de los interesados—sujeto activo o lesionado—, sino de ambos a la vez, que en virtud de su culpa recíproca quedan unidos por ese nexo. Por eso, si se aíslan los dos actos—el del autor material y el de la víctima—se comprueba que cada uno es suficiente por sí solo para integrar o perfeccionar la ofensa, como sucedería en un accidente de automovilismo suscitado por la alta velocidad impresa al vehículo y por la imprudencia del peatón al cruzar la calle leyendo un diario sin mirar hacia la dirección del tránsito.

"Por lo ilustrativas permítasenos transcribir las palabras de aquel jurista: 'Así—enseña—la mayoría de los autores se ha colocado en el terreno de la causalidad para determinar si la víctima culpable puede, sin embargo, exigir indemnización. Es el verdadero terreno, a condición de agregar que la solución del problema debe contemplarse desde un punto de vista social, teniendo en cuenta el interés de la sociedad en incitar la prudencia. Es ésta, en efecto, la idea esencial que domina toda la cuestión. Por ello se explica fácilmente que la víctima, si el daño proviene de su propia imprudencia, nada pueda reclamar, puesto que su culpa lesiona solamente su derecho personal.' Y agrega, a renglón se-

guido: 'El autor será responsable, por lo menos parcialmente, si podía prever el daño de acuerdo con el curso normal de las cosas, sobre todo si conocía la culpa del damnificado o podía conocerla o preverla. De lo contrario, no incurrirá en falta. Consideremos, con todo, el problema en cuanto a la víctima. Si su acto no es imputable (locura, embriaguez), la culpa del autor será únicamente tomada en consideración y el derecho del ofendido no será modificado, pues no se le podrá achacar un acto socialmente reprobable.'

"Exactos tales fundamentos, no han bastado para unificar opiniones acerca del modo de regular la situación de las partes interesadas. Dentro de los diversos criterios opuestos, dos de ellos se imponen netamente por su sencillez: a) el de la compensación de las culpas, y b) el del reparto proporcional del daño. Les pasaremos revista rápidamente:

"a) Para el criterio de la compensación, las culpas se aniquilan, se anulan recíprocamente, porque siendo imputables tanto al autor del hecho como a la víctima, ésta no tiene atribuciones para reclamar indemnización por los daños que experimenta, ya que en último extremo es cómplice involuntario del suceso ilícito. Es lo que ocurría en el Derecho Romano cuando un hombre se hacía afeitar en un campo de juego a la pelota y era herido porque ésta golpeaba, desviándola, en la mano del fígaro, dado que constituía seria negligencia realizar tal operación en un lugar peligroso para ello.

"Pero para que la compensación tenga lugar es preciso que concurran diversos requisitos que la hagan factible: 1º Que la ofensa sea precedida, acompañada o seguida por la culpa del agraviado; 2º Que las culpas sean del mismo grado, es decir, iguales; 3º Que los daños sean también iguales. Cualquiera de estas condiciones que falte produciría un desequilibrio capaz de impedir dicha compensación, pues una de las dos partes quedaría en situación inferior frente a la otra. De ahí que si las culpas son dispares la compensación atente contra dos principios jurídicos preponderantes en la materia: que cada uno debe soportar el daño en la medida en que ha contribuído a producirlo, y que nadie debe cargar con la responsabilidad y el perjuicio ocasionado por otro.

"b) Por eso esa teoría, matemáticamente seductora en sus lineamientos externos, desemboca en otra, en la del reparto, cuando la desigualdad mencionada aparece, que es lo que ocurre

generalmente. Véase como se expresa Demolomber en su clásico libro, maravilloso por la sencillez y la claridad de su exposición: '¿La culpa es exactamente igual tanto de una parte como de la otra? Las dos responsabilidades se anulan y se compensan; no hay lugar a ninguna condenación por daños e intereses. Y si las responsabilidades no son iguales porque hay grados en las faltas cometidas, cada uno debe abonar una indemnización por los daños y perjuicios en la proporción y en la medida de la culpa que le es imputable. Es a los magistrados a quienes corresponde determinar esta medida y esta proporción, según las circunstancias tan variadas, tan complicadas y, agreguemos, tan obscuras a veces, que pueden presentarse'.

*"Esta doctrina es más científica y concuerda mejor con la realidad.* Si la inimputabilidad se desvanece, si autor y víctima son culpables y las consecuencias de su comportamiento hay que atribuírselas conjuntamente, lógico es que la responsabilidad del agente material del suceso se atenúe hasta donde coincida con la responsabilidad individual del lesionado, y que sean los jueces, en atención a los caracteres especiales que ofrezca cada caso, quienes establezcan el monto de la reparación y la manera cómo se hará efectiva. *Se satisfará así la exigencia que hemos recordado algunas líneas antes, es decir, que cada uno debe hacer frente a la obligación derivada de su culpa en la proporción en que ha contribuído a originarla.*

"Ahora bien: como prácticamente es muy difícil establecer con exactitud cuál es, cuantitativamente, la influencia que cada una de las culpas tiene en la producción del daño causado, aun cuando la individualización de las mismas sea factible, se han propuesto varios sistemas que, al soslayar la injusticia que significaría la satisfacción integral de aquél por uno solo de los culpables, permitan por lo menos una reparación adecuada, distribuyendo el perjuicio entre todos los responsables.

"Algunos, por las razones expuestas, abogan para que ese perjuicio se divida en partes viriles, por mitades o, más aún, no sea resarcido íntegramente sólo por el autor material del hecho. El Código civil austríaco de 1811, por ejemplo dice en su artículo 1304: 'Si una parte del daño se causó por quien tiene derecho a la indemnización, éste deberá soportar una parte proporcional del daño. Soportará la mitad cuando la proporción no pueda ser fijada',

"Otros cuerpos legales extranjeros contienen disposiciones análogas que, por instructivas, conviene recordar. Transcribiremos las tres más sugerentes:

"Código civil alemán: 'Artículo 254: Si la parte perjudicada ha contribuído con su culpa a causar el daño, la obligación de reparar y el monto de la reparación dependen de las circunstancias, y, sobre todo, de que la lesión haya sido motivada principalmente por una o por la otra parte. Esta disposición se aplica, asimismo, si la culpa de la parte perjudicada consiste en no haber llamado del deudor sobre el peligro de un daño sumamente elevado, que aquél ignoraba o no podía conocer, o de haber omitido evitar o disminuir el perjuicio.'

"Código federal suizo de las obligaciones: 'Artículo 44: El juez puede reducir los daños y perjuicios, y aun no concederlos, cuando el perjudicado haya contribuído en la lesión o cuando los hechos de los cuales es responsable hayan coadyuvado a producir el daño o a aumentarlo, o cuando han agravado la situación del deudor.'

"Código civil chileno: 'Artículo 2330: La apreciación del daño está sujeta a reducción si el que lo ha sufrido se expuso a él imprudentemente.'

"Creemos que no es posible ni conveniente establecer una regla rígida. La multiplicidad enorme de variantes que los sucesos cotidianos ofrecen lo impide, y será inútil tratar de encasillarlas, uniformemente, en un precepto único. Es la libre y correcta apreciación judicial la que, en cada litigio, debe decir hasta qué punto aumenta, correlativamente, la de la víctima. Todas las teorías, apenas se las somete a la prueba de fuego de los casos en que es manifiesta la desigualdad entre la culpa de los dos miembros de la relación jurídica, concluyen por conducir a esta solución, que ofrece la virtud innegable de ser concreta, elástica y prudente.

"El Código civil argentino no contiene ninguna norma sobre el tópico, pero se llega a la misma conclusión—es decir, a que la culpa aquiliana concurrente atenúa la responsabilidad—por el juego de los artículos 1109 y 1111, en cuanto el primero dispone que 'todo el que ejecuta un hecho, que por su culpa o negligencia ocasiona un daño a otro, está obligado a la reparación del perjuicio', y en cuanto el segundo determina que 'el hecho que no cause daño a la persona que lo sufre, sino por una falta imputable a ella, no impone responsabilidad alguna'. Siendo así, no se

precisa ningún esfuerzo de dialéctica ni muchas palabras, por cierto, para percibir que *cada uno debe cargar con la parte de culpa que le corresponde en el acontecimiento y, por ende, con las consecuencias. Lo acaecido es imputable a las dos partes, y las dos, en honor a la equidad y a la justicia, no podrán desligarse de hacer efectiva la indemnización pertinente: el autor material, en menor proporción de la que le hubiese correspondido de no mediar la falta de la víctima, y ésta, recibiendo una reparación más baja de la que hubiera recibido en caso contrario.*

"La jurisprudencia de los tribunales nacionales, como no podía ser de otro modo, estudió el asunto en numerosas oportunidades. Los fallos dictados al respecto abundan y de su ordenamiento sistemático es dable deducir las siguientes reglas:

"1º La culpa concurrente no exime de responsabilidad. Podría llegar a eximir de ella si fuese igual en las dos partes intervinientes.

"2º Determina la responsabilidad recíproca de las partes, en relación a la cual debe el juez fijar, proporcionalmente, los perjuicios sufridos.

"3º Hace disminuir, por consiguiente, el monto de la indemnización.

"4º Debe tenerse en cuenta para graduar la reparación a pagarse.

"En este mismo orden de cosas, el Proyecto de Reformas, en su artículo 869, 2ª parte, propone esta solución: 'Si la culpa del damnificado contribuyó a causar el daño, la cuantía del resarcimiento se disminuirá en esa proporción', norma que tiene el doble defecto de su mala literatura y de su escasa claridad, pues no se sabe si esa proporción se refiere a la culpa o al daño. Nos parece mucho mejor redactarla de la siguiente manera, de conformidad con todo lo que llevamos dicho: 'Si la culpa fuere concurrente, el magistrado, de acuerdo con las circunstancias de cada caso, podrá disminuir el monto de la indemnización y aun dispensar de ella al autor material del hecho'."

Prácticamente todos los países que están en la órbita del derecho civil han aceptado el sistema de negligencia comparativa. 17 Corn. L. Q. 333, 337; 11 Tulane L. Rev. 114. La misma doctrina es seguida en Alemania, Austria, Suiza, Portugal y Canadá. 28 Chicago-Kent L. Rev. 238 *et seq.* En el año 1945, la creadora maternal del derecho común repudió

a su hija espúria, la doctrina de negligencia contribuyente, como eximente total de responsabilidad. En la Gran Bretaña se aprobó la Ley de Reforma Legal de 1945, que dispone, en parte, que en casos de culpa mutua, una reclamación de daños y perjuicios no será derrotada totalmente por el hecho de que la víctima sea negligente, pero los daños y perjuicios serán entonces reducidos hasta el punto que el tribunal considere justo y equitativo, teniendo en cuenta la participación del demandante en la causación de los daños. 28 Chicago-Kent L. Rev. 245; 51 Mich. L. Rev. 466, 467, número de febrero de 1953, en donde se citan también los estatutos de todas las provincias del Canadá, de Nueva Zelandia y de Australia, llegándose a la conclusión de que en el Imperio Británico queda muy poco de la antigua regla de negligencia contribuyente. Véase además Friedman, *Law and Social Change in Contemporary Britain*, 73 *et seq.*, 260. En 28 Chicago-Kent L. Rev. 345, se cita como modelo La Ley de Negligencia Contribuyente de 1937, de la provincia de Alberta en el Canadá, que dispone, en parte, que si se causan daños mediante la culpa de dos o más personas, la responsabilidad será fijada en proporción al grado de culpa de cada una de las personas, y que las cuestiones relativas a la cantidad de daños y perjuicios sufridos y los grados de culpa serán cuestiones de hecho para el tribunal en primera instancia.

Es curioso que el Tribunal Supremo de España ha dictado relativamente pocas opiniones sobre el problema de la culpa común o de la negligencia contribuyente, y que en esas pocas opiniones no se ha precisado exactamente el alcance de la doctrina. Pero son tan abundantes los precedentes en los otros países donde impera el Derecho Civil con respecto a los grados de negligencia y al reparto proporcional de daños cuando media una culpa común, que el hecho que España esté en la retaguardia en cuanto a esta materia no implica que nosotros tengamos que seguir ciegamente a España y nos abstengamos de colocarnos en la posición de vanguardia de casi la totalidad de los demás países que han adoptado las normas de la culpa

común y de la distribución proporcional de las responsabili-
dades. De todos modos, el Código Civil de España tomó como
modelo, en gran parte, el Código Napoleónico. El artículo
1902 de España, correspondiente al 1802 nuestro, es repro-
ducción casi idéntica del 1382 de Francia, y, antes de apro-
barse el Código de España, ya en Francia se había interpre-
tado el 1382 como requiriendo la doctrina del reparto propor-
cional de daños.

En España, de las Siete Partidas surge el principio de la
negligencia comparada. 11 Tulane L. Rev. 121, 122. Espe-
cialmente, la Partida 7, título 33, Ley 11 establece la grada-
ción de culpas, por ejemplo, en cuanto a la culpa leve y la
levísima.

Examinemos la jurisprudencia española. Debemos dis-
tinguir aquellos casos en que se ha resuelto que un demandado
no es responsable si él no ha sido en absoluto negligente o si
ha mediado un suceso fortuito o imprevisible, o resultado de
una emergencia súbita. Nuestro problema se refiere al caso
en que ambas partes han sido negligentes, y en que la negli-
gencia contribuyente de la víctima ha sido de menor magnitud
que la del demandado, y su participación en la cuasación del
accidente ha sido menor que la del demandado. Es cierto que
en varios casos el Tribunal Supremo de España ha resuelto
que un demandado no responde cuando el mal se ha producido
por causa directa imputable al perjudicado (sentencia de 13
de octubre de 1927), o cuando la negligencia del perjudicado
es la causa mediata o inmediata del accidente. Sentencia de
6 de julio de 1918. Pero nuestro artículo 1802 (1902 de Es-
paña), no se expresa en términos de causa directa o inmediata.
No determina que un demandado es responsable solamente
cuando su negligencia sea la causa inmediata o directa del
daño. Se limita a decir que un demandado responde por el
daño causado por él. Él puede causar cierta cuantía de daños
aun si hubo otra causa más directa e inmediata. Su acto no
deja de ser una causa por el hecho de la coexistencia de otra
causa posterior en el tiempo y en el espacio. El artículo 1802

no exige que la actuación del demandado sea *la única* causa del accidente. Basta conque sea *una* causa que produzca daño, y el daño que él debe reparar debe ser medido en proporción a la magnitud y grado de *su* causa, en la producción del accidente. Ya hemos visto que, como cuestión de realidad física, un suceso puede ser ocasionado por distintas causas coexistentes. El propio Tribunal Supremo de España ha rechazado, con posterioridad a los casos citados, todos esos conceptos filosóficos sobre "causa inmediata o directa", "causa como condición necesaria antecedente" o "sine qua non" y "causa predominante y excluyente", y ha resuelto que debe corresponder a los tribunales el determinar cuáles han sido las causas, como cuestión de hecho físico y real, y comprobar la aportación de cada causa, debiendo tener en cuenta los tribunales *el pensamiento compensador de la ley* al fijar la idemnización. En su sentencia del 25 de enero de 1933, interpretando el artículo 1902, resuelve lo siguiente:

"Considerando en cuanto a la falta de nexo causal entre la conducta del agente y el daño producido por no existir entre el embargo de un buque y su naufragio, según advierte el recurrente, ninguno de los enlaces notológicos, racionales o jurídicos puestos de relieve en las distintas teorías por él citadas, que la Jurisprudencia no puede tomar parte en la discusión filosófica que agrupa de un lado a los partidarios de la causa eficiente y de otro a los que más bien se apoyan en el principio de razón suficiente, ni adoptar una posición intermedia a favor de la *conditio sine qua non,* o del factor predominante; o de la circunstancia principal o de cualquier otro momento causal propugnado por técnicas extranjeras, y acaso bastaría para orientar a los Tribunales de justicia en la resolución de los problemas concretos, llamar su atención hacia el pensamiento compensador de la ley cuando trata de remediar la lesión sobrevenida en las facultades o patrimonio de una persona a consecuencia de la acción u omisión ajena con la indemnización exigible al autor de ésta; o todavía con menor compromiso, sería suficiente encaminar su actuación hacia la valoración de las condiciones o circunstancias que el buen sentido señalara en cada caso como índices de responsabilidad dentro del infinito encadenamiento de causas y efectos."

Interpretamos esa decisión como un repudio de la tesis de causa directa o causa inmediata, y debemos considerar esa regla como la prevaleciente en España. En otras sentencias del mismo Tribunal se ha aclarado que la negligencia de la víctima exonera de responsabilidad al demandado cuando ella es la causa única y exclusiva del accidente. Sentencias de 5 de marzo de 1925; de 24 de febrero de 1928 y de 27 de octubre de 1931.

En otras sentencias del más alto tribunal de España encontramos los elementos de la doctrina que estamos sosteniendo, de la concurrencia de culpas y multiplicidad de causas. En la sentencia del 21 de diciembre de 1910 se resolvió lo siguiente:

"Considerando que incurre en la responsabilidad establecida por el artículo 1902 del Código Civil el que por omisión causa daño a otro, interviniendo culpa o negligencia, y como en el caso a que el presente recurso se refiere resulta que los cables conductores de la electricidad de la Compañía La Electricista Toledana carecían de resguardo necesario para evitar accidentes en el sitio donde el suceso ocurrió, hecho que afirma la Sala sentenciadora y no ha sido desvirtuado por el medio establecido en el núm. 7º del artículo 1692 de la Ley de Enjuiciamiento civil, y se causó daño al joven Silva Covisa, es manifiesto que la referida Sala, al aplicar el expresado artículo, no lo infringió, y por esto no procede dar lugar al primer motivo del recurso:

"Considerando que no obsta a la anterior estimación que el mencionado joven, sin objeto conocido, saliera al tejado por donde pasaba el cable conductor del flúido eléctrico, porque apreciando el Tribunal sentenciador que aquél no verificó el acto directo que se suponía de haber raspado con una navaja el cable, dando lugar a la descarga eléctrica que le lesionó los dos brazos, no cabe deducir que exclusivamente por sus propios actos sufriera el daño:

"Considerando que las justas causas de exención sancionadas por la jurisprudencia a favor del que origina el daño causado, cuando el mal se produce por causa directa imputable al perjudicado, por haber realizado una acción relacionada inmediatamente con el hecho productor del mismo, no concurre en el presente caso, y por ello no cabe estimar la infracción de la doctrina

alegada en el motivo segundo del recurso, ya que está declarado, por la apreciación del hecho no combatida del Tribunal *a quo* que el joven Silva no realizó el acto ya mencionado de raspar *los* cables, si bien consta su imprudencia de salir a un tejado y recorrerlo, no está probado que el joven fuera para tocar o entretenerse de otro modo con los cables, *aparte de que si éstos hubieran estado en las condiciones necesarias para evitar daños no se hubiera producido el accidente que tan triste resultado dió,* y que, por lo dicho, es imputable a la Sociedad La Electricista Toledana, por no tener su instalación en la forma debida, jamás excusable existan o no Reglamentos que determinen la forma de hacerlo:" (Bastardillas nuestras.)

En la sentencia del 30 de marzo de 1926 se resuelve lo siguiente:

"Considerando que las cuestiones relativas a la existencia o realidad de la culpa o negligencia y la cuantía de los daños y perjuicios, consecuencia de ellos, son de mero hecho y sometidas a la apreciación exclusiva del Tribunal *a quo*, sin que tales cuestiones puedan impugnarse más que demostrando que incide el fallo recurrido en error de hecho o de derecho, conforme al número 7º del artículo 1.692 de la ley de Enjuiciamiento civil:

"Considerando que, según se aprecia en la sentencia, la crecida que tuvo el río Guadalimar en el día de autos, por sí sola no produjo los deterioros que se ocasionaron en la presa del molino sito en Piedra del Sombrero, cuyo importe se reclama; pero a continuación se afirma que el daño lo motivó el río al no ir las maderas flotadas en las debidas condiciones de trenzado, con pies muertos y maromas, según buena costumbre de los madereros, y estas afirmaciones no contradicen el que después añada la sentencia *que a ambas causas combinadas hay que atribuir el accidente,* porque el Tribunal hace la manifestación categórica y expresa de que hubo negligencia, generadora de la culpa por parte de las personas encargadas de conducir las maderas, de lo cual tenían que ser responsables los dueños de las mismas; a lo que hay que agregar que hubo también infracción de los Reglamentos, al dar principio a la flotación sin esperar a que transcurriesen los quince días señalados en la concesión contraviniendo lo dispuesto en el párrafo segundo del artículo 143 de la ley de Aguas, sin que tal afirmación la contradiga el telegrama del Gobernador de Jaén al Alcalde de Siles ni el oficio del Comandante

del puesto de la Guardia civil, que se refiere a la imposibilidad de vigilar las maderas flotadas por haber sido arrastradas en distintas direcciones a causa de la crecida del río antes citado; lo que, como se ve, *no se opone a que la causa determinante del daño fuera el ir aquéllas mal acondicionadas;* ni, por último, resulta incongruente la sentencia con la demanda, por el hecho de no hacerse mención de la crecida del río y haber ocurrido el daño el día siguiente del que se citaba; y en su consecuencia no se han infringido los preceptos legales que constan en el primero y segundo motivo del recurso, que por tanto deben ser desestimados:" (Bastardillas nuestras.)

Como se ve, en esta última sentencia se resuelve que el accidente se debió a "ambas causas combinadas", y que el hecho de que hubiese otra causa no se opone a la realidad de que *la causa determinante* del daño hubiese sido la negligencia de la parte demandada.

El concepto de causa inmediata, y el de la negligencia contribuyente como eximente de responsabilidad fueron rechazados en la sentencia del 13 de junio de 1932, en donde se impuso responsabilidad a una parte demandada negligente, no obstante el hecho de que el demandante fué responsable de negligencia contribuyente, y aunque esa negligencia contribuyente hubiese sido la causa inmediata del accidente. Se resolvió lo siguiente:

"Considerando que sin negar que la causa inmediata de la muerte por electrocución de Rafael Cerdeño fuera debida a su propia imprudencia como se afirma en la sentencia recurrida, por subir sin necesidad ni orden a la parte superior de un montón de paja encima del cual cruzaba unos sesenta centímetros más alto un cable conductor de energía eléctrica a alta tensión, *es necesario reconocer que la causa fundamental sin la cual ese acto del joven Cerdeño no hubiera tenido las consecuencias lamentables que produjo* al ponerse en contacto su cuerpo con el expresado cable, fué la colocación del montón de paja en lugar tan inadecuado y expuesto a una contingencia de esta clase; por la que al observarlo el demandado, en el supuesto de que él no hubiera ordenado su colocación en tal forma, debió espontáneamente por una medida de elemental prudencia, disponer su traslación a donde no existiera el peligro que la proximidad con el

cable constituía, de que pudiera suceder lo que en efecto ocurrió; máxime cuando se le advirtió reiteradamente por un empleado de la Compañía de Electricidad del riesgo que corría si no se cambiaba de lugar aquella paja requiriéndole para que la trasladara a donde no existiera ese peligro, a pesar de lo cual fueron desatendidas tales indicaciones; y de ello se desprende que al obrar de esa forma el demandado lo hizo con negligencia que sanciona el artículo 1.902 del Código civil con la indemnización consiguiente a la reparación del daño causado:

"Considerando que de lo que se deja expuesto en el Considerando anterior se desprende que el Tribunal de instancia no aplicó debidamente el artículo 1.902 del Código civil al estimar que al demandado no le alcanzaban los efectos de esta disposición legal, absolviéndole de la responsabilidad que de reconocer que había obrado con culpa o negligencia le hubiera correspondido; por lo que procede dar lugar a la casación de la sentencia que se solicita por el recurrente, sin ser necesario entrar en el examen del otro motivo que por el mismo se alega con igual finalidad." (Bastardillas nuestras.)

En la sentencia del 18 de enero de 1936 se trataba de una colisión entre un vehículo y un tren. Se resolvió lo siguiente:

"Que la teoría de la coexistencia de culpas, orientada en la opinión de los tratadistas sobre culpa extracontractual y en la jurisprudencia extranjera, puede ser acomodada al contenido y alcance del principio general fijado en el artículo 1.902 del Código civil.

"Que no obstante, para que la concurrencia de culpa pueda ser compartida o compensable, es imprescindible que aquéllas sean de igual grado y de idéntica virtualidad jurídica; lo que no ocurre en el caso de los autos, ya que las obligaciones que atañen a la Compañía ferroviaria son de constante y forzosa observancia, porque afectan a la seguridad, cuidado y vigilancia de los caminos de hierro, y no cabe equipararlas al acto imprudente del conductor de un automóvil, que pudo ser determinado por la creencia de que los silbidos de la locomotora le apercibirían de la proximidad del tren.

"Que desde el momento en que un Tribunal de instancia aprecia la coexistencia de las dos culpas en cuya virtud se ha producido el daño, es indispensable que se determine la relación que entre ambas exista, ya que, por su importancia, puede una

absorber a la otra o provocar la atenuación de la responsabilidad del agente; y no surgiendo de la sentencia estas bases de comparación, ofrece la Compañía grado de culpa en sus omisiones, por la trascendencia del servicio que le está encomendado, y excluye, por tanto, la atribuída al recurrente."

Debe advertirse que en la última sentencia dictada se establece que el artículo 1902 (1802 nuestro) admite la doctrina de coexistencia de culpas, y que *es indispensable que se determine la relación que entre ambas exista,* o sea, comparar ambos grados de negligencia, según hemos venido sosteniendo, y también se resuelve que una culpa puede provocar *la atenuación de la responsabilidad,* esto es, reducir el importe de los daños a ser recobrados, lo que conlleva la tesis del reparto proporcional de daños dentro del campo de la coexistencia de culpas, o culpa común. Es cierto que en la sentencia se indica que para que las culpas sean compensables, o compartidas (igualmente) ambas culpas deben ser de igual grado y de idéntica virtualidad jurídica. Pero ello envuelve una situación distinta a la que venimos tratando. Cuando ambas culpas son iguales, entra en juego la doctrina de la compensación. Pero lo que estamos discutiendo son los casos, como el de autos, en que la culpa del demandado es de mayor grado y magnitud que la de la víctima, y lo que sostenemos es que la culpa contribuyente *menor* del demandante no debe eximir totalmente de responsabilidad al demandado.

El ilustre civilista Castán, hoy Juez Presidente del Tribunal Supremo de España, coincide con la tesis de la concurrencia de culpas y del reparto proporcional de daños, y señala que los últimos casos de España que hemos citado justifican la aplicación de esa doctrina. En su obra, Derecho Civil Español, 6ta. edición revisada, Tomo 2, pág. 468, 469, se indica lo siguiente:

"*c*) Elemento causal: relación entre el daño y la falta.—La prueba de la relación de causa a efecto entre la falta cometida por una persona y el daño sufrido por otra es—dice Planiol— una de las más grandes dificultades que presentan en la práctica

las cuestiones de responsabilidad por culpa, y, sin embargo, es imposible condenar por daños si no se demuestra cumplidamente esta relación. Confírmalo así nuestra jurisprudencia en reiterados fallos (7 de marzo de 1902, 12 de noviembre de 1904, 16 de junio de 1905, 17 de mayo de 1913, 28 de enero de 1919, 15 de febrero de 1924, 5 de octubre de 1932, etcétera). Pero no hace falta que el daño proceda exclusivamente de la falta, *pues hay lugar a indemnización aunque haya mediado también imprudencia del mismo perjudicado* (sentencia de 21 de diciembre de 1910) o hayan contribuído al accidente, a un mismo tiempo, el caso fortuito y la culpa de la persona a quien se reclama la indemnización (véase la sentencia de 30 de marzo de 1926).

"Como dicen Pérez y Alguer, *ni la jurisprudencia del Tribunal Supremo, ni ningún precepto del Derecho positivo español son un serio obstáculo para que, concurriendo culpa apreciada en ambas partes, puedan ser repartidas equitativamente las consecuencias del hecho dañoso entre el agente y el perjudicado.* Reconociéndolo así, la sentencia de 18 de enero de 1936 declara que para que la concurrencia de culpa pueda ser compartida o compensable, es imprescindible que aquéllas fueran de igual grado y de idéntica virtualidad jurídica, lo que no sucede cuando se trata de un accidente ferroviario en el que el juzgador de instancia establece de modo categórico la responsabilidad por negligencia de la Compañía ferroviaria y la falta de debida diligencia del conductor del automóvil arrollado por el tren, sin determinar la relación que entre ambas culpas existía, ya que de no surgir de la sentencia estas bases de comparación, la Compañía ofrece en sus omisiones mayor grado de culpa por la trascendencia del servicio que le está encomendado.

"Sobre las teorías que en la técnica extranjera se han dibujado en orden al nexo causal entre la conducta del agente y el daño producido y la orientación que han de seguir los Tribunales en esta cuestión, puede verse la interesante sentencia de 25 de enero de 1933." (Bastardillas nuestras.)

Existe otra evidencia definitiva al efecto de que nuestro Código Civil autoriza la reducción de los daños imputables de acuerdo con el grado de negligencia de las partes. El artículo 1056 de nuestro Código Civil, que corresponde al 1103 de España, dispone lo siguiente;

"Artículo 1056.—La responsabilidad que proceda de negligencia es igualmente exigible en el cumplimiento de *toda clase de obligaciones,* pero *podrá moderarse* por los tribunales según los casos." (Bastardillas nuestras.)

Los tribunales podrán moderar la responsabilidad, esto es, reducir la cuantía de los daños, en cuanto a *toda clase* de obligaciones. Tal disposición es aplicable a acciones por daños y perjuicios bajo el artículo 1802, y ambos artículos deben ser interpretados conjuntamente. (Sentencias del Tribunal Supremo de España de 14 de diciembre de 1894 y de 15 de enero de 1902.)

En 8 Manresa 201, quinta edición, se indica lo siguiente:

"Particular estudio merece, la Jurisprudencia relativa a la facultad moderadora que el artículo 1.103 concede a los Tribunales, con la que viene a sustituirse la antigua distinción a que antes se refería el comentario, entre los diversos grados de culpa, *pues esa potestad de limitar la responsabilidad, se hace a base de la correlativa posible estimación de una culpa más leve,* que la media o normal, determinante de la reparación completa de los daños y perjuicios causados.

"La Sala al estimar que no excediese del límite que fijó, la cantidad abonable por el demandado a causa de su negligencia, no hizo más que usar de la facultad discrecional, que le confiere el artículo 1.103 del Código civil, y reconoce la Sentencia de 29 de mayo de 1897, de moderar, según los casos, la responsabilidad procedente de negligencia, facultad que, dado su carácter, no requiere para su ejercicio, petición concreta de las partes, bastando con que se solicite indemnización de daños y perjuicios, ni es susceptible de casación, por no estar sujeta a reglas, y sí, al prudente arbitrio de los Tribunales, careciendo de base el supuesto error que se aprecia en la estimación de la prueba, cuando el Tribunal ejercita una facultad discrecional (Sentencia de 14 de mayo de 1920). Análoga doctrina en las Sentencias de 29 de mayo de 1897, y 4 de julio de 1925.

"Sin embargo, la de 3 de abril de 1940, declara, que la facultad a que nos venimos refiriendo 'no es de ejercicio arbitrario ni discrecional en absoluto en cuanto el propio precepto expresa, habrá de hacerse uso de ella según los casos, esto es, atendidas las circunstancias y normas legales que los afectan, no siendo

dudosa la improcedencia de aplicarla, en aquéllos, en los que el perjuicio consista en la percepción de cantidades que al perjudicado pertenecen, toda vez que de seguirse distinto criterio vendría a quedar amparado, sin causa justa y contra la más elemental equidad, un ilegal enriquecimiento a costa de aquél, que es lo que en el caso examinado acontece . . .'

"Del conjunto de estas resoluciones cabe deducir las siguientes conclusiones:

"1ª. La facultad moderadora que nos ocupa, pueden los Tribunales ejercitarla, como expresamente advierte la sentencia de 14 de mayo de 1920, de oficio, *cuando adviertan por la menor importancia de la culpa causante, la equidad de que el culpable no responda de todas las consecuencias de su acción u omisión.*

"2ª. Que si no hace uso de la referida potestad, no cabrá impugnar el fallo por inaplicación del artículo 1.103, que es facultativa en el juzgador.

"3ª. Que tampoco podrá impugnarse en casación la sentencia, cuando el Tribunal de instancia hubiere hecho uso de aquélla, y en cuanto a la menor o mayor moderación que hubiere acordado.

"4ª. Que por excepción, podrá recurrirse en casación, cuando al hacerse la moderación, ésta traspasare los límites debidos en el sentido de dejar sin reparación el daño o el perjuicio en la medida mínima y sobre todo cuando diere lugar a un injusto beneficio o enriquecimiento a favor del deudor." (Bastardillas nuestras.)

### En 19 Scaevola 522, se dice lo siguiente:

"*Arbitrio judicial.*—No sólo para la apreciación de la prueba presentada por las partes acerca de la existencia de la culpa, sino para la regulación de la responsabilidad correspondiente, el Código, liberal esta vez como nunca, concede a los Jueces y Tribunales amplísima facultad de regulación, permitiendo en el artículo 1.103 que moderen, según las causas, dicha responsabilidad.

"Al pronto, parece ser superflua esta disposición, puesto que se halla naturalmente comprendida dentro de la facultad que se concede a los Tribunales para apreciar libremente las pruebas. ¿Qué más poder que el de determinar arbitrariamente si la culpa existe o no existe?

"Pero de lo que trata el artículo 1.103 es de otra cosa, o sea de la moderación de la responsabilidad sobre la base de la existencia de la culpa. Está reconocido que el deudor fué culpable;

corresponde después apreciar en qué grado; *si debe responder en totalidad de los daños y perjuicios causados, o en una parte solamente;* y esto, como dice el Código, según los casos, que viene a ser, por la misma doctrina del artículo 1.104, 'según la naturaleza de la obligación y las circunstancias de la persona, del tiempo y del lugar'.

"Esta doctrina, aplicable a todas las obligaciones, se confirma en el artículo 1.726 del Código con relación al mandato, determinando que la regla de la responsabilidad exigible en caso de culpa depende de que el mandatario se encuentre o no retribuído; y del mismo modo cuando se trata de la gestión de negocios (artículo 1.889), en que se permite a los Tribunales moderar la importancia de la responsabilidad según las circunstancias del caso.

"Reservando para su lugar propio el estudio más amplio de estas disposiciones, tomemos nota ahora de cómo también la utilidad mayor o menor que se recibe en la obligación contraída debe influir en el ánimo de los Tribunales para el establecimiento de la culpa *y para determinar el grado de la responsabilidad,* respondiendo muy justamente en esto a los antecedentes ya examinados del derecho de Roma." (Bastardillas nuestras.)

Demostrando que es inescapable el criterio de que el sistema de nuestro Derecho Civil autoriza la reducción en los daños de acuerdo con el grado de negligencia, en 8 Manresa 194, 5ta. ed., se indica, en forma clara y meridiana que aun prescindiendo de las clasificaciones rígidas de culpa bajo el derecho romano, el Código Civil autoriza la graduabilidad de las culpas, mediante el ejercicio de la acción moderadora de los tribunales. Se dice, en parte, lo siguiente:

"Explicando el texto de los artículos 1.103 y 1.104 que comentamos, vemos en corroboración de lo dicho:

"1º Que el Código no sólo acepta la posibilidad de grados en la culpa, sino que huye de fijar un número determinado de aquéllos; procura, mediante la regla general de atender a las circunstancias de cada caso, y la acción moderadora de los Tribunales, extender tanto la *graduabilidad* de la *diligencia,* y por tanto de la culpa, que pueda en éstas casi señalarse un grado para cada obligación.

"2⁹ Que en este criterio tan racional, puesto que en cada caso la diligencia que debe exigirse es la *que en él esté indicada,* que lejos de ser siempre igual, tendrá la misma variedad de las relaciones y hechos en que surja y se manifieste, llega a determinar que se atienda en cada obligación, no sólo a la *naturaleza abstracta* de la relación en que esté comprendida, sino a todos los *elementos, aun cuando sean accidentales,* verdaderas *circunstancias* que en la existencia real de una obligación *concreta, particular,* concurran."

En la sentencia del Tribunal Supremo de España de 3 de julio de 1924 se indica que el artículo 1056 (nuestro) es aplicable a relaciones contractuales. Pero tal artículo se refiere a toda clase de obligaciones. Así lo indica Manresa al distinguir la citada sentencia, y al decir, a la página 196 del tomo 8:

"Reconócese la unidad del concepto de la culpa, en la Sentencia de 14 de diciembre de 1894, donde se declara que, los artículos 1.101, 1.103 y 1.104, son de carácter general, aplicables a toda clase de obligaciones, y no ofrecen contradicción con las especiales de los artículos 1.902 y 1.903. Corrobora esta resolución los antes comentados, y lo dicho también en el comentario al artículo 1.101, nada de lo cual contradice, a nuestro parecer, la Sentencia de 3 de julio de 1924, que declara, es sólo aplicable el artículo 1.103 a las responsabilidades que nacen del incumplimiento de las obligaciones contractuales, pero no a las reguladas en el cap. II del Tit. XVI, Lib. IV; pues el fallo se funda, en no haberse combatido en la forma procesal adecuada, o sea, por vía del número 7⁹ del art. 1.692 de la ley de Enjuiciar, la apreciación de la prueba hecha por el Tribunal de instancia, con ocasión de lo cual se rebate el alegato del art. 1.103 en que se fundaba el recurrente, sin otra argumentación."

### La Situación en Puerto Rico

El artículo 1802 de nuestro Código Civil dispone lo siguiente:

"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado."

Formulando una disección analítica de ese artículo, es fácil comprobar que contiene tres elementos esenciales, a saber:

(1) la producción de daños

(2) la culpa o negligencia de un demandado

(3) la causación, esto es, que la culpa o negligencia *cause daño,* existiendo la obligación de reparar *el daño causado.*

Olvidemos, por el momento, los dos primeros elementos, ya que, al determinar los efectos de una negligencia contribuyente, estamos asumiendo que se han producido daños y que ha habido negligencia de ambas partes. Lo esencial es el tercer elemento, de la causación. Lo que nos dice el artículo 1802 es que un demandado es responsable si él ha causado daño con su negligencia. El problema entonces es si él ha dejado de causar daño por el hecho de que la otra parte también ha contribuído a causar el daño. El planteamiento del problema envuelve su solución. Es evidente que por el hecho de que haya mediado negligencia contribuyente del demandante, ello no implica, de por sí, que el demandado haya dejado de causar daño con su negligencia. Ambas partes han sido negligentes y ambas han contribuído a causar el daño. El demandado ha causado daño con su negligencia, y eso es lo que exige el artículo 1802, al decir que *"el que . . . causa daño* (negligentemente) está obligado a reparar *el daño causado".* La obligación de reparar está limitada al daño causado, y el problema ahora relevante se refiere solamente a cuál es el daño causado por el demandado, esto es, qué parte del daño total ha sido causado por la negligencia del demandado, aunque otra parte del daño total haya sido también causada por la negligencia contribuyente de la víctima. El problema ante nos no es uno de negligencia, ya que la negligencia se asume. El problema en cuanto a la concurrencia de culpas es exclusivamente uno de causación, que define los contornos y límites de la obligación de reparar. De acuerdo con ese tercer elemento del artículo 1802, la cuantía de la reparación es fun-

ción, y depende del alcance de la causación atribuíble a la negligencia del demandado. Al decir el artículo 1802 que un demandado responde por el *daño causado* por su negligencia, ello no significa en forma alguna que ese demandado sea responsable solamente si su negligencia ha sido la *única* causa del accidente. El demandado responde por lo que él cause, pero eso no quiere decir, ni requiere, que él sea el único que cause. La doctrina de negligencia contribuyente como eximente automático de responsabilidad, independientemente de su grado, está predicada necesariamente en la tesis de que si la negligencia del demandado no ha sido la única causa del accidente, esto es, si la víctima ha contribuído a la causación, entonces ello de por sí exime de responsabilidad al demandado. Esa tesis no está autorizada por el artículo 1802, que solamente requiere que el demandado repare el daño causado por él. De otro lado, el artículo 1802 tampoco requiere que la actuación del demandado sea la causa "directa o inmediata", para que pueda surgir responsabilidad. Ese concepto constituye un aditamento judicial al artículo 1802. Ni siquiera el artículo 1802 dispone que la negligencia del demandado sea *la* causa del daño. Lo que dispone es que el demandado cause daño con su negligencia, y que él está obligado a reparar el daño causado por su negligencia. Y ya hemos visto que la cuestión de causación es una de hecho y de realidad física, a ser comprobada por los tribunales, y que las realidades nos indican que determinado resultado puede ser producido por distintas causas, cada una con su correspondiente participación proporcional. Si un daño ha sido causado por dos conductas negligentes, debe fijarse el grado de cada causa a los fines de establecer responsabilidades de acuerdo con la realidad de los hechos. La causa inmediata no excluye la realidad de otras causas previas que son antecedentes necesarios o *sine qua non* para que se pueda haber producido el daño.

Ahora bien, darle consideración cabal a los precedentes del derecho civil y a la esencia misma del artículo 1802, este Tribunal ha adoptado la teoría del derecho común de la negli-

gencia contribuyente como eximente total de responsabilidad, y ha sentado normas de "única causa" y "causa inmediata" que no están justificadas por el artículo 1802. Por más de cincuenta años hemos incorporado artificialmente a nuestro sistema de derecho una doctrina injusta e irreal, que es contraria al derecho civil. Aun asumiendo, argüendo, que la generalidad del artículo 1802 justifica cualquiera de las dos doctrinas, no debe haber obstáculo alguno a la doctrina más justa y más científica, que es la que estamos favoreciendo y que, por lo menos, está claramente justificada por las disposiciones de nuestro Código Civil.

En cuanto a nuestras decisiones judiciales, es importante comprobar el origen de la larga serie de opiniones en que este Tribunal, erróneamente según mi criterio, ha adoptado la doctrina del derecho común de negligencia contributoria. Un juez federal en Puerto Rico había resuelto en el año 1909 que bajo el sistema del derecho civil imperante en Puerto Rico, la negligencia contribuyente de la víctima, siendo solamente una causa contribuyente del accidente, ella no impedía la recuperación de daños y perjuicios, pero sí era relevante para reducir la cuantía de los daños. *Ubeda y Salazar* v. *San Juan Light & P. Co.*, 4 Porto Rico Federal Reports 533, que se amparó, en parte, en el caso de Islas Filipinas de *Rakes* v. *Atlantic G. & P. Co.*, 7 Phil. Rep. 359.

En el caso de *Claudio* v. *Cortínez*, resuelto el 19 de junio de 1905, (9 D.P.R. 108), este Tribunal habla por primera vez de la negligencia contribuyente, pero a base de una ley especial de marzo de 1902 que cubría reclamaciones de obreros contra patronos, por accidentes, en cuya ley se disponía expresamente que los empleados sólo tenían acción si al tiempo de recibir la lesión corporal ellos estuviesen ejercitando un debido cuidado y diligencia. Se citan entonces algunos casos resueltos en los Estados Unidos, en que se estableció la doctrina de negligencia contribuyente. Pero en la opinión no se discutieron en forma alguna las disposiciones de nuestro Código Civil. Esa opinión fué citada en el segundo caso que le siguió

sobre esta materia, y en donde también se establece la doctrina antigua, en el derecho común, de la negligencia contribuyente, o sea, el caso de *Natal* v. *Bartolomey et al*, 14 D.P.R. 486, en donde se discute el actual artículo 1802 de nuestro Código Civil, y se dice que la negligencia contribuyente exime de responsabilidad, ya que ella era la causa inmediata del accidente. Ya he tratado de demostrar que el concepto de "causa inmediata" es contrario al artículo 1802.

Naturalmente, el criterio adoptado en esta opinión concurrente presupone la revocación de una multiplicidad de opiniones en que se ha adoptado la doctrina errónea de la negligencia contribuyente. Pero el hecho en sí de la necesidad de tal revocación no debe servir de muralla infranqueable a la adopción de una nueva doctrina más justa y más correcta. La investigación judicial de un problema no se refiere exclusivamente al hecho en sí de que el problema ha sido resuelto anteriormente. Lo esencial es comprobar si tal solución es instrínsecamente correcta o errónea. El *stare decisis* no justifica la perpetuación de un error, y no debe servir de sustituto al proceso de ponderado raciocinio. La estabilidad en las normas no puede ser ignorada, como elemento importante en la vida jurídica de un pueblo. Pero esa estabilidad no debe ser sinónimo de paralización, y debe ser reconciliada con el progreso y desarrollo de nuestro sistema legal. Recordemos que la vida de Puerto Rico no termina en el año 1954. Nuestro sistema de leyes tiene muchos siglos en el porvenir. La experiencia en los últimos cincuenta años debe servir de punto de orientación en el futuro, pero no de punto de congelación del futuro. Los primeros cincuenta años son relevantes, pero no de importancia única y decisiva en cuanto a los cientos y miles de años de vida jurídica y social que aún restan a nuestra comunidad.

Nuestra jurisprudencia en cuanto a este asunto es contraria a la tradición del derecho civil, y en forma incompatible con la justicia intrínseca, la lógica jurídica y los conceptos de bienestar social. Ha sometido nuestro ambiente especial al

gravamen artificial de una doctrina que carece de racionalidad y de razón de ser, con excepción de su propósito original de favorecer a los patronos negligentes. Aun los autores originales del yerro están rectificando ante el impacto implacable de la justicia y de las realidades. Esta opinión concurrente no adopta el plan de modernizar nuestro sistema legal mediante legislación judicial, sino el de rescatar el Código Civil de una interpretación injustificada y de imprimirle a ese Código su verdadera significación prístina y auténtica.

No debe decirse que la inacción legislativa ante nuestras opiniones anteriores haya convertido en válida una interpretación errónea. Existe una multiplicidad de razones por las cuales una legislatura deja de actuar en determinado asunto. Si la pasividad legislativa ha de tener consecuencias legales concretas, nunca podrían dejarse sin efecto los errores judiciales. Un error de comisión, en este sentido, no se convierte en correcto y válido en virtud de otro error de omisión. Y la Asamblea Legislativa muy bien pudo haber creído que era innecesario el enmendar el artículo 1802, hasta que lo judicial corrigiese su criterio.

### Las Fórmulas de Reparto Proporcional de Daños

Una vez aclarada la doctrina de negligencia comparada, o de culpa común con el correspondiente reparto proporcional de los daños, la fijación de la indemnización envuelve esencialmente cuestiones de hecho sobre la cuantía del daño total sufrido y sobre la magnitud y grado de la aportación de cada una de las causas concurrentes. Esas son cuestiones de hecho a ser resueltas por el tribunal de primera instancia, dentro del ejercicio de un prudente arbitrio. Se han sugerido varias fórmulas de orientación general al juzgador. En 51 Mich. L. Rev. 465, 497, Prosser: "Comparative Negligence", se aboga por la siguiente fórmula:

(1) Después de haberse comprobado si ambas partes han sido negligentes, debe determinarse la cuantía total de los

daños y perjuicios sufridos por la víctima, considerada esa cuantía total como un ciento por ciento.

(2) Debe establecerse una comparación entre ambas culpas, determinando el porcentaje de participación de cada una. Si la culpa de la víctima representa ser un 20 por ciento, entonces el demandado respondería hasta un 80 por ciento del daño total sufrido por la víctima, esto es, si los daños y perjuicios sufridos ascienden en total a $10,000 el demandado estaría obligado a pagar $8,000 por vía de indemnización.

Otra fórmula sugerida adopta la norma, en el ejemplo arriba expuesto, de reducir el 20 por ciento del 80 por ciento, siendo responsable entonces el demandado por un 60 por ciento del daño total, esto es, por $6,000.

No creo que el juzgador deba estar aprisionado o restringido por fórmulas matemáticas rígidas. La tradición y la regla del derecho civil es al efecto de que los tribunales moderarán la indemnización de acuerdo con las circunstancias. La fijación de las responsabilidades mutuas debe dejarse a la discreción razonable y al prudente arbitrio del juzgador, y él debe determinar la aportación relativa de cada parte a la causación del accidente, sin que tenga que seguir reglas de porcentajes específicos. La solución que favorezco, al efecto de que el reparto proporcional de daños es cuestión que descansa en la sana discreción del tribunal de primera instancia, sin obligación de seguir fórmulas rígidas de porcentaje, es la misma solución adoptada por los comentaristas del derecho civil que ya he citado, y es la solución que, a mi juicio, debe convertirse en regla judicial en Puerto Rico. Debo aclarar que si ambas culpas son de igual grado, ellas deben compensarse sin que nadie responda por los daños.

### LAS CIRCUNSTANCIAS DE ESTE CASO

Una de las consecuencias de la aplicación de la doctrina anglo-americana de negligencia contribuyente ha sido la de estimular a los tribunales a escapar del obvio rigorismo y de la clara injusticia de tal regla, mediante la sutil elaboración

de excepciones. El ataque ha sido indirecto y no frontal. Por ejemplo, se ha encontrado un escape en los tecnicismos ultra refinados de la doctrina de la última oportunidad de evitar el daño (*last clear chance*). Véanse, 51 Mich. L. Rev. 472 *et seq.*, número de febrero de 1953; 47 Yale L. J. 704: "Last Clear Chance, A Transitional Doctrine". Su defecto esencial, inverso al de la negligencia contribuyente, es que descarga todos los riesgos y toda la responsabilidad sobre el demandado más negligente, aunque el demandante haya sido también negligente.

En la misma categoría encontramos la excepción implícita de los niños. Se ha establecido la norma de niños de "similar situación, edad o circunstancias" para llegar a la conclusión de que un niño no ha sido responsable de negligencia contribuyente, a pesar de que, como cuestión de hecho y de realidad física, ese niño ha contribuído a causar el accidente, hasta cierto punto, y que, realmente, ese niño ha sido descuidado. Ese descuido pudo haber sido de muy poca importancia y de muy poca magnitud y grado, considerando especialmente su poca edad, pero no ha dejado de ser algún descuido, como cuestión de realidad física, por el hecho de que haya sido leve o de un grado menor. Las circunstancias de su edad sirven para aminorar el grado de culpa y de causación, dentro de la doctrina de reparto proporcional de responsabilidades que favorecemos, y para moderar la idemnización, según el artículo 1056 de nuestro Código Civil, pero no deben servir como base para una conclusión divorciada de la realidad al efecto de que el niño no ha sido descuidado en absoluto.

Con respecto a las circunstancias específicas de este caso, me permito reproducir los dos primeros párrafos de las conclusiones sobre los hechos formuladas por el tribunal a quo:

"1. El menor demandante Ellis Hernán Irizarry, huérfano de padre, está bajo la patria potestad de su señora madre Providencia Irizarry, en cuya compañía vive en el barrio 'Candelaria' de Lajas, Puerto Rico. A la fecha del accidente que ha

dado margen a esta acción dicho menor contaba ocho años de edad y cursaba el segundo grado de escuela elemental.

"2. El día 27 de diciembre de 1948, a eso de las nueve de la mañana, el menor demandante caminaba por la carretera pública del citado barrio 'Candelaria' del término municipal de Lajas, en busca de una 'yerbita' para su 'güimo'. A la orilla de la carretera se encontró un cartucho de cartón como de 4½ pulgadas de largo, lo llevó inmediatamente a su casa allí cercana y en el patio de la misma quitó el cartón encontrando dentro un pedazo o tubo de metal cobrizo como de una pulgada y cuarto de largo y del grueso de su dedo meñique con un 'alambrito' pegado a uno de sus extremos el que puso sobre una piedra dándole con un machete. Al así hacerlo el pequeño artefacto hizo explosión en la cara del menor dejándolo inconsciente y causándole lesiones de las cuales fué curado y atendido en el Hospital de Lajas y luego en el Hospital Municipal de Mayagüez. La evidencia demuestra que el hallazgo del cartucho por el menor demandante y la explosión del mismo fueron actos continuos sin el conocimiento ni intervención de la madre ni de persona otra alguna. La madre se dió cuenta del accidente luego de ocurrida la explosión. Nada hay en la prueba que demuestre que el menor demandante sabía la naturaleza peligrosa del artefacto encontrado por él. Según su propio testimonio, no controvertido, él nunca antes había visto uno igual."

La realidad inescapable es que el niño fué *algo* descuidado al recoger de la carretera el cartucho de cartón, llevarlo a su casa y allí darle con un machete al artefacto. Su conducta fué *algo* imprudente, aun para un niño de ocho años de edad. Su descuido no fué grave ni sustancial, fué más bien leve, en vista de su edad. Pero ese carácter leve no implica que dejó de ser algún descuido. Por ser leve, el descuido del niño no debe reducir notablemente la idemnización a ser pagada por el demandado. La reduciría en forma leve, comparable con la poca magnitud del descuido, pero siempre debería reducirla, hasta cierto punto.

Es importante la actitud mental en cuanto al problema de la negligencia contribuyente de menores. En el antiguo marco de la tesis de negligencia contribuyente como eximente total de responsabilidad del demandado, los tribunales han

sido solícitos en tratar de demostrar que ha habido ausencia de negligencia contribuyente, aun en contra de la realidad de los hechos. Pero ante el nuevo punto de vista al efecto de que la negligencia contribuyente reduce proporcionalmente, y no elimina totalmente, la indemnización, estamos libres para reconocer las realidades. La realidad que yo veo en este caso, tan obvia que salta a la vista, es al efecto de que el menor fué algo negligente.

Estoy de acuerdo con la indemnización de $15,000 fijada en la opinión de este Tribunal, porque creo que la cuantía total de los daños y perjuicios sufridos por la parte demandante es mayor de quince mil dólares, pero que, comparando la negligencia de ambas partes, la cuantía total de los daños y perjuicios debe ser reducida a $15,000.

---

Opinión concurrente del JUEZ ASOCIADO SEÑOR SIFRE.

Estoy enteramente de acuerdo con la opinión del Tribunal. En el caso de autos no existe base alguna para llegar a la conclusión de que el menor demandante fué culpable de imprudencia. Graves e injustas consecuencias sobrevendrían si revocáramos la doctrina que se reafirma en dicha opinión sobre las normas que deben observarse para juzgar la conducta de niños de corta edad.

En cuanto a la negligencia que el apelante atribuye al menor, el Tribunal se limita a resolver que no medió tal negligencia, conclusión que concuerda con la de la corte a quo, y que impediría que revisáramos la doctrina sobre negligencia contribuyente, aún en el supuesto de que consideráramos aconsejable el hacerlo.